# EXHIBIT

# A

COPY

Hon. Amy St. Eve, Room 1260
Government's Ex Parte and Sealed Submission on
Government's Sentencing Position Concerning
Defendant Radler, Under Seal
Eric H. Sussman, AUSA, (312) 353-1412



UNDER SEAL

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | **Under Seal** |
| | ) | No. 05 CR 727 |
| v. | ) | |
| | ) | Hon. Amy J. St. Eve |
| CONRAD M. BLACK, et. al. | ) | |

**NOTICE OF FILING**

TO:   All Defense Counsel


   **PLEASE TAKE NOTICE** that on Friday, November 9, 2007, the government filed
with the Clerk of the United States District Court for the Northern District of Illinois, Eastern
Division, 219 South Dearborn Street, Chicago, Illinois 60604, the following document:
**Government's** *Ex Parte* **and Sealed Submission on Government's Sentencing Position
Concerning Defendant Radler.**

                              Respectfully submitted,

                              PATRICK J. FITZGERALD
                              United States Attorney

                        By:

                              ERIC H. SUSSMAN
                              Assistant United States Attorneys
                              219 South Dearborn Street
                              Chicago, Illinois 60604
                              (312) 353-1412

Dated: November 9, 2007

RECEIVED
NOV - 9 2007
JUDGE AMY ST. EVE
United States District Court

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

**RECEIVED**

NOV - 9 2007

JUDGE AMY ST. EVE
United States District Court

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | **UNDER SEAL** |
| | ) | |
| v. | ) | No. 05 CR 727 |
| | ) | Judge Amy St. Eve |
| CONRAD M. BLACK, et al. | ) | |

### GOVERNMENT'S *EX PARTE* AND SEALED
### SUBMISSION ON GOVERNMENT'S SENTENCING
### POSITION CONCERNING DAVID RADLER

The UNITED STATES OF AMERICA, by its attorney, PATRICK J. FITZGERALD, United States Attorney for the Northern District of Illinois, respectfully makes the following *ex parte* and sealed submission on the government's sentencing position concerning David Radler. It is the government's position that these materials should not be disclosed (other than to defendant Radler), and that disclosure of these materials could reveal and impair ongoing criminal investigations in the United States and Canada. In support of its position, the government states as follows:

1.    Defendant David Radler pled guilty on September 20, 2005 to an indictment charging him with mail fraud in violation of 18 U.S.C. §§ 1341 and 1346.

2.    Defendant provided substantial assistance in the investigation and prosecution of other defendants in the above-captioned case, and the government

agreed in a plea agreement to move for a downward departure under Guideline § 5K1.1.

3.    Because the government's sentencing position concerning defendant Radler includes details concerning Radler's cooperation in ongoing government investigations as well as information concerning Radler's potential cooperation with Canadian authorities, the government requests leave to file the motion under seal.

4.    Government counsel has consulted with counsel for defendant Radler, who has no objection to the motion.

WHEREFORE, the United States respectfully moves for leave to file its sentencing position with respect to defendant Radler *ex parte* and under seal.

Respectfully submitted,

PATRICK J. FITZGERALD
United States Attorney

By: _____

ERIC H. SUSSMAN
JEFFREY H. CRAMER
JULIE B. RUDER
EDWARD N. SISKEL
Assistant U.S. Attorneys
(312) 353-5300

Date: November 9, 2007

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | No. 05 CR 727 |
| v. | ) | |
| | ) | Hon. Amy J. St. Eve |
| CONRAD M. BLACK, et. al. | ) | |

**RECEIVED**

NOV - 9 2007

JUDGE AMY ST. EVE
United States District Court

## NOTICE OF FILING

TO:    Anton R. Valukas, Esq.
       Jenner & Block, LLP
       330 N. Wabash Avenue
       Chicago, IL 60611

PLEASE TAKE NOTICE that on Friday, November 9, 2007, the government filed
with the Clerk of the United States District Court for the Northern District of Illinois, Eastern
Division, 219 South Dearborn Street, Chicago, Illinois 60604, the following document:
**Government's *Ex Parte* and Sealed Submission on Government's Sentencing Position
Concerning Defendant Radler.**

Respectfully submitted,

PATRICK J. FITZGERALD
United States Attorney

By: _____

ERIC H. SUSSMAN
Assistant United States Attorneys
219 South Dearborn Street
Chicago, Illinois 60604
(312) 353-1412

Dated: November 9, 2007

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

*RECEIVED*

*NOV - 9 2007*

*JUDGE AMY ST. EVE*
*United States District Court*

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | No. 05 CR 727 |
| v. | ) | Judge Amy St. Eve |
| | ) | |
| CONRAD M. BLACK, et al. | ) | **UNDER SEAL** |

## GOVERNMENT'S SENTENCING POSITION CONCERNING DEFENDANT DAVID RADLER

Now comes the United States of America, by and through its attorney, Patrick J. Fitzgerald, United States Attorney for the Northern District of Illinois, and respectfully submits this Government's Sentencing Position Concerning Defendant David Radler.

## I.    Background

In April 2004, Anton Valukas, David Radler's attorney, first contacted then-AUSA Robert Kent to discuss the possibility of Radler cooperating with the government in its investigation into allegations of wrongdoing by executives at Hollinger International ("International"). Although much of the conduct underlying the future charges was already over five-years old – the Hollinger Inc. ("Inc.") payments from the *American Trucker* and CNHI I transactions took place in February 1999 – the government's investigation was still in its infancy. While government agents and attorneys had access to millions of documents and scores of low-level employees at International by April of 2004, the full nature

of the fraud remained shrouded in obtuse e-mails, intricate accounting methods and a complex multinational corporate structure. Moreover, none of the other defendants had approached the government to cooperate.

At the time Radler's lawyers broached the possibility of his cooperation, the Special Committee of the Board of International was still months away from finalizing its report. Even after that report was issued in the late-summer/early-fall of 2004, the potential criminal violations remained uncertain. The Special Committee's report detailed a plethora of corporate misdeeds, excessive payments and seemingly unfair transactions. The government faced the daunting task of sifting through each of these alleged misdeeds and determining whether they appeared to be criminal in nature and the intent of the participants. Additionally, given the timing of many of the allegations, the government was working on a tight deadline if the criminal conduct was to be charged within the five-year statute of limitations.

After a series of additional meetings between Radler's attorneys and attorneys for the government, the parties agreed in December 2004 that Radler would begin his cooperation with the government. At the time he began his cooperation with the government, there were no promises made to Radler. Radler's cooperation was provided pursuant to the U.S. Attorney's Office's standard proffer letter. One additional feature of Radler's cooperation, however,

was that he had also agreed to cooperate with the SEC in the Commission's investigation. Accordingly, the SEC provided Radler with a separate proffer letter, and participated in most of the early proffer sessions along with the AUSAs and federal agents working on the criminal investigation.

Over the course of the next eight months, and prior to entering into a plea agreement with the government, Radler participated in approximately ten interview sessions with government investigators (including regulators from the SEC). Many of these sessions lasted for an entire day and involved the review of hundreds of documents. The interviews covered a wide range of topics – some of which were the subject of the later criminal charges and many others that were not. The topics covered in the interviews are summarized in voluminous agent reports. Among the topics covered in interviews with Radler prior to entering into his plea agreement were:

- the Hollinger corporate structure;
- responsibilities of various Hollinger executives;
- the *American Trucker* transaction;
- the CNHI I transaction;
- the "Template" for inserting Inc.;
- the CNHI II transaction;
- Conrad Black's SEC consent decree in the *Norcen* case;

3

- disclosure of non-competes to the SEC;

- advice provided by Tory's attorneys;

- the other U.S. Community non-competes (including APC);

- Moffat Management fees;

- market manipulation by Conrad Black through the Brascan corporation;

- Horizon corporate structure, history and transactions;

- Ravelston management fees;

- the Liberty transaction;

- transfer pricing studies performed by KPMG;

- the CanWest transaction;

- the Hollinger Digital bonus plan;

- Inc's newspaper holdings including La Republica;

- conversations with Conrad Black after the formation of the Special Committee; and

- circulation fraud at the *Chicago Sun-Times* and *Daily Southtown.*

Throughout the course of the government's interviews with Radler, government agents and attorneys were interviewing additional witnesses and attempting to confirm and corroborate the information provided by Radler. While the government confronted Radler on several occasions during the course of the pre-plea interview sessions concerning the truthfulness of his proffer and

4

his complete acceptance of responsibility for the criminal conduct at issue in the case, the government ultimately determined that the information provided by Radler was accurate and complete. Moreover, even in those instances where the government challenged Radler's minimization of his own wrongdoing, the government never discerned any attempt on the part of Radler to shift criminal blame from himself to other participants.

Prior to entering into a cooperation agreement with Radler, the government attempted to contact defense counsel for several other defendants. One defendant proffered with the government in September of 2004. Government attorneys and agents, however, concluded that much of the information provided by that defendant was not entirely truthful. Certain information provided by that defendant was demonstrably false and inconsistent with third-party witness testimony. Moreover, in contrast to the information provided by Radler, the government was concerned that certain portions of the information provided by the other defendant was intended to shift the blame from himself to other participants -- in some cases, individuals whom the government believed were innocent participants. Every other defendant contacted by the government refused to meet with the government. Thus, despite several attempts by the government to meet with other potential defendants who were less extensively involved in the fraud and benefitted less

from it, by early-August 2005, Radler was the only cooperating individual who acknowledged engaging in criminal conduct.

On August 9, 2005, the government entered into a letter agreement with Radler under which the government agreed to recommend, *inter alia*, a sentence of 32 months imprisonment and a $250,000 fine in exchange for Radler's complete and truthful cooperation. Shortly before testifying in the grand jury, Radler's attorney, Anton Valukis, met with government attorneys, including U.S. Attorney Patrick Fitzgerald, and negotiated Radler's final plea agreement, which included an additional reduction of three-months imprisonment (from 32 months to 29 months) based on the timing and extent of Radler's cooperation. Accordingly, the final plea agreement was personally signed by the U.S. Attorney, and reflected his decision that the nature and extent of Radler's cooperation to the government's investigation warranted the departure set forth in the plea agreement.

On August 18, 2005, Radler testified before the grand jury (pursuant to his plea agreement) and was charged in a seven-count indictment along with Mark Kipnis and The Ravelston Corporation. The five-year statute of limitations was due to expire on two of the seven counts (Counts Two and Three) within the upcoming weeks.

6

On September 20, 2005, Radler appeared before this Court and entered a guilty plea pursuant to a Rule 11(c)(1)(C) agreement with the government. As part of his plea agreement, Radler agreed to fully and truthfully cooperate with the U.S. Attorney's Office and the SEC in "connection with any investigation and litigation regarding" his conduct in the Hollinger matter. Radler and the government agreed to recommend a sentence of 29 months' imprisonment and a $250,000 fine.[1] By this time, Radler had already made full restitution to International.

After entering his plea agreement with the government, Radler continued actively to assist the government in the prosecution of the pending case and the investigation of additional charges. For example, Radler provided the government with information concerning:

- Black's use of the Park Avenue apartment in New York;

- Black's use of corporate aircraft;

- Barbara Black's birthday party;

- bonus money paid to Kipnis and other executives;

---

[1] While the plea agreement specifies a particular number of months of imprisonment – 29 months – rather than a percentage off the low-end of "the applicable Guideline range," the edition of the Guidelines Manual used to compute the sentencing guidelines set out in the plea agreement was the November 1, 2000 edition. At the time of Radler's plea, these were the most favorable Guidelines applicable to the offense conduct, and the Seventh Circuit had not issued its opinion in *United States v. Demaree*, 459 F.3d 791 (7th Cir. 2006).

- ownership stakes in Horizon held by Black, Atkinson and Kipnis;

- Horizon's internal documents and records;

- options back-dating at International; and

- off-site records locations and safes containing Hollinger Inc. records.[2]

Moreover, after Black and others were indicted in November 2005, Radler assisted the U.S. government and Canadian authorities in identifying Black's assets in Canada, and notified authorities of plans to liquidate those assets.[3] Radler also provided financial details concerning Conrad Black and Barbara Black that were not available to the government by any other means. The information provided by Radler in this context led to the government's obtaining an additional $10 million in equity in Black's Palm Beach property[4] and an additional $1 million in cash to secure Black's bond.

---

[2]Much of the information provided by Radler was also used by the government to prepare for cross-examination of defense witnesses including Radler's co-defendants.

████████████████████████████████████████████████████████

[4]Radler alerted the government to an asset sale in Canada where Black was scheduled to receive CDN $16 million. The government in turn notified Canadian tax authorities who were able to execute a tax lien against Black for the proceeds of this transaction. Once the Canadian tax was paid, a $10 million lien against the Palm Beach property by the Canadian tax authorities was extinguished.

Finally, Radler met with the government on numerous occasions during the course of the trial to prepare for his testimony and assist the government in presenting its case-in-chief. Radler's trial testimony lasted approximately one week. While the government continues to believe that Radler was not its "star witness," he nevertheless provided the jury with a critical roadmap to the charges in the case. After Radler finished his testimony, he continued to provide information to the government in an effort to address issues raised by the defense in cross-examination concerning his Canadian representation and his knowledge of Canadian probation proceedings.

## II.   Guideline Section 5K1.1

Guideline Section 5K1.1, promulgated by the Sentencing Commission, provides a means to recognize a defendant for cooperation:

### § 5K1.1. Substantial Assistance to Authorities (Policy Statement)

Upon motion of the government stating that the defendant has provided substantial assistance in the investigation or prosecution of another person who has committed an offense, the court may depart from the guidelines.

(a) The appropriate reduction shall be determined by the court for reasons stated that may include, but are not limited to, consideration of the following:

(1) the court's evaluation of the significance and usefulness of the defendant's assistance, taking into consideration the government's evaluation of the assistance rendered;

(2) the truthfulness, completeness, and reliability of any information or testimony provided by the defendant;

9

(3) the nature and extent of the defendant's assistance;

(4) any injury suffered, or any danger or risk of injury to the defendant or his family resulting from his assistance;

(5) the timeliness of the defendant's assistance.

In describing cooperation departures in the post-*Booker* world, the Seventh Circuit has explained:

> There would be considerably less cooperation - and thus more crime - if those who assist prosecutors could not receive lower sentences compared to those who fight to the last. Neither *Booker* nor § 3553(a)(6) removes the incentive for cooperation - and because this incentive takes the form of a lower sentence for a cooperator than for an otherwise-identical defendant who does not cooperate, the reduction cannot be illegitimate.

*United States v. Boscarino*, 437 F.3d 634, 638 (7th Cir. 2006).

In *United States v. Thomas*, 930 F.2d 526 (7th Cir. 1991), the Seventh Circuit directed that a district court should examine the government's recommendation "in light of the factors like, but not limited to, those listed in § 5K1.1.(a)." *Id.* at 531. Ultimately though, "the government's recommendation should be the starting point for the district court's analysis." *Id.* Here, the government believes that the 29-month sentence agreed to in the parties' plea agreement is an appropriate sentence in light of the factors set forth in § 5K1.1.(a) and taking into account the circumstances at the time the plea was negotiated.

## A.    Timeliness of Radler's Cooperation

Few things were as important as the timeliness of Radler's cooperation with the government. As described above, Radler's counsel approached the government at an early stage in the government's investigation and well before any formal charges were commenced against him. Radler's early cooperation was essential in assisting the government with narrowing its investigative focus and providing a roadmap for future charges. Radler spent scores of hours walking prosecutors and agents through a series of complex corporate deal documents and explaining the inner workings of Ravelston, Inc. and International. Radler's cooperation at such an early stage in the case also enabled the government actively to pursue charges for several of the Inc. non-compete agreements that might have been barred by statute of limitations had they not been charged by late 2005.

The timeliness of Radler's cooperation is particularly significant given the fact that he was the government's only cooperating witness on the non-compete scheme for which the defendants were ultimately convicted.[5] The government made plea overtures – similar to those offered to Radler – to every defendant in the case other than Black. All of those plea overtures

---

[5] Paul Healy was given immunity by the government in exchange for his testimony concerning the New York corporate apartment.

11

were rejected. Thus, while the terms of Radler's plea agreement may appear generous compared to the sentences currently facing his convicted co-defendants, similar plea agreements were rejected by co-defendants who preferred to take their chances at a jury trial. Indeed, had those defendants ultimately been acquitted at trial, the government would still be before this Court asking it to sentence Radler to 29 months in prison.

## B.    Nature and Extent of Radler's Cooperation

The full nature and extent of Radler's cooperation is best evaluated by looking at two different aspects of his cooperation: a) Radler's investigative assistance; and b) Radler's trial testimony. As described in more detail above, Radler's investigative assistance to the government was invaluable. Radler provided the government with information concerning over 40 different areas of investigative significance. For many of these areas, Radler was the only witness with direct knowledge who had agreed to provide information to the government. Much of the information supplied by Radler directly led to criminal charges and ultimately convictions in the case.[6] While there was information from various sources connecting Kipnis, Boultbee and Atkinson to the non-compete agreements, Radler provided what proved to be the only

---

[6]For example, Radler's cooperation was one of the primary reasons the government was able to secure a plea agreement and cooperation from his co-defendant The Ravelston Corporation.

first-hand and explicit evidence of Black's knowledge and intent concerning

the fraudulent non-compete agreements. It is uncertain whether the

government would have been in a position to indict Black for the U.S.

Community non-compete agreements in November of 2005 without the

investigative assistance provided by Radler.[7]

Even in those instances where Radler's information and cooperation did

not ultimately result in criminal charges, he saved the government significant

resources and innumerable hours of investigation. For example, in the fall of

2006, the government received information concerning allegations of stock

options backdating at Hollinger International. Radler provided information

to the government (both at the U.S. Attorney's Office and the SEC) in order

for the government to determine on an expedited basis whether the options

backdating would result in additional (superseding) criminal charges against

Black, Radler, Kipnis and others. While the government ultimately

concluded that it would not supersede the indictment with additional charges,

without Radler's cooperation, the government could have been forced to ask

---

[7]As noted above, Radler also agreed to cooperate with the SEC in its civil proceeding. The SEC has provided a separate letter setting forth the nature and extent of Radler's cooperation. *See* Attached SEC Letter.

for a delay of the trial in order to conduct a comprehensive investigation of potential charges.[8]

Radler's trial testimony was also important to the government's prosecution and conviction of defendants. Radler was able to provide the jury with a historical context for the growth of the Hollinger newspaper enterprise. He explained Black's role in Hollinger's growth and gave the jury a sense of Black's level of involvement in strategic planning at Hollinger. Radler also provided invaluable testimony concerning the inner workings of Ravelston, Hollinger Inc. and International.[9] Most significantly, however, Radler gave the jury an inside view into how the non-compete scheme originated and how it was implemented by the defendants. Radler described the "template" for the jury and who originated it. He explained the role of the Executive Committee and how it operated. Radler also described a series of interactions with defendants which allowed the jury to conclude that these

---

[8]In addition to his cooperation with the government, Radler also cooperated with International in its internal investigation into stock options backdating – an investigation that was later disclosed publicly to shareholders. Radler continues to cooperate with International in its ongoing litigation.

[9]In addition to his substantive testimony on these points, Radler provided critical foundation testimony for a series of internal corporate documents that the government might not have otherwise been able to introduce into evidence. *See, e.g.,* Radler 10-14 (Black's "Musings"); Trucker 11-15; CNHI 25, 28, 29; CanWest 18; Horizon 3-6; APC 4.

individuals took money from Hollinger International with the intent to defraud the company and its shareholders.

### C.    The Truthfulness, Completeness and Reliability of Radler's Cooperation

As the government acknowledged during the trial, Radler was not entirely truthful during his initial meetings with the government. At certain of these early meetings, for example, Radler minimized the criminality of aspects of his conduct by claiming that he did not believe that there was anything wrong with inserting Inc. into the non-compete agreements for the sale of International's assets. Radler's minimization did not involve shifting blame to other defendants. Instead, Radler's minimization centered around a difficulty with acknowledging his own criminal intent for certain conduct, and a desire to protect his co-schemers. Over the course of his meetings with the government, Radler came more fully to accept responsibility for all of his conduct and acknowledge that he understood (at the time of the conduct) the fraud underlying his and his co-defendants' non-compete scheme.

Contrary to the way his conduct was portrayed by the defense at trial, the government did not at any point conclude that Radler was lying to the government about the roles of the various co-defendants in the charged schemes. To the contrary, the government is not aware of any instances where Radler provided false information concerning the conduct of any co-

15

defendant. The government has never had a concern that Radler portrayed a defendant as more culpable in an effort to please the government or provide favorable testimony. With the exception of his early minimization concerning his own state of mind – a not infrequent difficulty with cooperating defendants – the government found all of the information provided by Radler to be consistent with the facts and reliable.

Radler's testimony was vigorously attacked by the defense, just as the government cooperator's testimony is attacked by the defense in every other criminal trial. From the outset, the defense attempted to paint Radler as a liar and a manipulator. Moreover, the defense asserted that Radler testified falsely against his co-defendants in a effort to obtain a deal and support the government's case. Defendants never established, however, that Radler lied about anything – either having to do with the facts of the case or collateral to the case. Most of defendants' strongest arguments concerning Radler were instead based on those instances where Radler's testimony was inconsistent with the government's theory of the case where the defense insisted that Radler *told the truth*, such as the APC non-competes and Kipnis' bonus payments. The government believes that Radler's trial testimony was truthful.

16

While there are instances – such as the APC payments – where other evidence proved Radler's initial understanding of events to have been mistaken, the government does not believe that this undermines Radler's overall credibility or the truthfulness of his testimony. The government knew from the start that Radler's understanding and recollection of events did not always fit neatly into its case. Nevertheless, the government believes that Radler presented himself to the jury for who he was – including his sometimes difficult personality – and allowed the jury to make an informed decision about how to evaluate him and his testimony.

### D.    Disparities Between Sentences of Radler and Co-Defendants

As referenced in the plea agreement, at the time Radler's plea was negotiated, the parties anticipated that the 2000 Guidelines Manual would govern his sentence. Under the parties' preliminary calculations, Radler was facing a Guideline sentence of 57-71 months imprisonment. This preliminary calculation used the same loss figure (over $20,000,000) that the government currently proposes using for the convicted co-defendants. The agreed sentence of 29 months imprisonment for Radler represents approximately 50% off the low end of the 2000 Guideline range. Given the timing of Radler's cooperation and the extent of his assistance, the government believes that a departure of this degree is warranted.

17

The Seventh Circuit has repeatedly held that disparities between the sentences of a cooperating witness and his or her cooperating co-defendants are justified. In *United States v. Meza*, 127 F.3d 545 (7th Cir. 1997), the Seventh Circuit explained that § 5K1.1 is "designed to produce disparate sentences for otherwise similarly situated offenders; the goal of uniformity takes a back seat to encouraging offenders to cooperate with the prosecution." *Id.* at 547. *See Boscarino*, 437 F.3d at 638 (disparity between cooperating and non-cooperating defendant is legitimate); *United States v. McMutuary*, 217 F.3d 477, 489-90 (7th Cir. 2000). One reason for the disparate sentences in this case is that Radler was the only defendant willing to accept responsibility for his conduct and tell the truth. The other defendants all had opportunities to cooperate with the government, but each elected to "roll the dice" and hope that a jury would acquit them.

The other key reason for the disparate sentences is the change in the sentencing law that has occurred since Radler's guilty plea. Under *United States v. Demaree*, 459 F.3d 791 (7th Cir. 2006), district courts (in the Seventh Circuit) now must consider the Manual in effect at the time of sentencing.[10] As a result, all defendants are required to be sentenced with

---

[10]In *Demaree*, the Seventh Circuit did not simply approve the use of the Manual in effect at sentencing and leave the choice of Manual to the district court, but rather started the opinion with this observation: "The judge applied the 2004 guidelines [the

18

reference to the 2007 Guidelines, which are higher than the Guidelines in the 2000 manual that was used to calculate the guidelines in Radler's plea agreement.  Moreover, Radler's plea agreement locked in – subject to this Court's approval – the 29-month term of incarceration, rather than providing for a certain percentage off whatever the Court determines is the appropriate Guidelines range.  Put another way, while the government is required to follow the ruling in *Demaree*, the government must also honor its contractual plea obligations, which – in this case – requires the government to recommend a 29-month sentence.  *See, e.g., United States v. Lezine*, 166 F.3d 895, 901 (7th Cir. 1999) ("Government is obliged under the law of contracts to fulfill any promises it makes in exchange for the defendant's guilty plea."); *United States v. Monti*, 477 F. Supp. 2d 943 (N.D. Ill. 2007) (Holderman, C.J.) (holding that post-*Demaree*, the government was required to honor provision in plea agreement that earlier version of the Guidelines would apply at sentencing).

The government's position as to Radler's plea agreement is not unique.  In evaluating the appropriate sentence to recommend for cooperating defendants, the government is best positioned to take into account the value

---

one in effect at sentencing], as he was *required* to do by the Sentencing Reform Act, 18 U.S.C. § 3553(a)(4)(a)(ii) . . . ."  459 F.3d at 792 (emphasis added).

19

of cooperation and the need for cooperation in order to advance law enforcement interests. *See Wayte v. United States*, 470 U.S. 598, 607 (1985). Accordingly, the U.S. Attorney's Office in this district has lived up to the terms of pre-*Demaree* cooperation plea agreements, even where the applicable Guideline sentences have increased. *See, e.g., United States v. Putnam*, 03 CR 268 (Gettleman, J.); *United States v. Kahn and Van Eyl*, 02 CR 287; *United States v. Tomczak*, 04 CR 921 (Der-Yeghiayan, J.); *United States v. Edwards*, 03 CR 69 (Castillo, J.); *United States v. Lowecki*, 05 CR 693 (Coar, J.).

Ultimately, the government's ability to persuade individuals to cooperate with law enforcement, and therefore prosecute crime, is directly linked to its ability to promise sentencing departures and live up to its promises. Substantial-assistance departures create a strong incentive for individuals to cooperate with the government. It is a truism to say that the earlier the government receives truthful cooperation, the better. It is therefore critical to effective law enforcement that the government be in a position to provide additional recognition for cooperation provided early in an investigation.

Here, this Court has requested that the government evaluate Radler's cooperation and advise the Court as to the government's current sentencing position. The government has carefully reviewed the full extent of Radler's

cooperation, both during the investigation and during the trial. After consultations among the trial attorneys involved in the prosecution, senior-level supervisors, and the U.S. Attorney who set the terms of the original plea agreement, the government continues to believe that the 29-month term of imprisonment recommended in Radler's plea agreement is the appropriate sentence in this case.

## CONCLUSION

WHEREFORE, the United States respectfully requests that the Court accept the terms of the parties' plea agreement and sentence Radler to a term of 29 months incarceration.

Respectfully submitted,

PATRICK J. FITZGERALD
United States Attorney

By: ERIC H. SUSSMAN
JEFFREY H. CRAMER
JULIE B. RUDER
EDWARD N. SISKEL
Assistant U.S. Attorneys
(312) 353-5300

Date: November 9, 2007

21

ATTACHMENT



**UNITED STATES
SECURITIES AND EXCHANGE COMMISSION
CHICAGO REGIONAL OFFICE**
SUITE 900
175 WEST JACKSON BOULEVARD
CHICAGO, ILLINOIS 60604

PETER K.M. CHAN
Assistant Regional Director
Division of Enforcement

Telephone: (312) 353-7390
Facsimile: (312) 353-7398

November 9, 2007

Eric H. Sussman
Assistant U.S. Attorney
219 S. Dearborn St., Ste. 500
Chicago, Illinois 60604

Re: <u>SEC v. Conrad Black et al.</u>, No. 04 C 7377 (N.D. Ill.)

Dear Mr. Sussman:

I write in response to your request for information concerning F. David Radler's cooperation in connection with the above-referenced civil enforcement action filed by the United States Securities and Exchange Commission (the "SEC").

Mr. Radler cooperated with the SEC's action by providing valuable information about the fraudulent activities that are the subject of the SEC's action, including in-depth information concerning his own involvement and the involvement of defendant Conrad Black and others in the fraud.

Mr. Radler also cooperated with the SEC's action by offering to settle the case against him and cooperating fully in connection with effecting that settlement. As part of his settlement, Mr. Radler disgorged $23,695,277 in ill-gotten gains that he received in connection with the transactions that were the subject of the SEC's complaint, including $15,573,411 in purported non-competition payments that he received in connection with Hollinger International Inc.'s sale of newspapers to CanWest Global Communications Corporation. He also paid a civil penalty of $5,000,000, one of the largest civil penalties against an individual wrongdoer in SEC enforcement actions in recent years. As part of the settlement, Hollinger International, Inc., a victim of the fraud perpetrated by Mr. Radler and others, received the approximately $28.7 million in disgorgement and civil penalty paid by Mr. Radler. Mr. Radler also agreed to be barred from serving as an officer or director of any publicly traded company. In his Consent, Mr. Radler further agreed to cooperate with the SEC's action and any related judicial or administrative proceeding or investigation by the SEC by, among other things, making himself available to be interviewed by SEC staff, producing documents and/or appearing for testimony. Attached is a copy of the Consent and the Final Judgment As to Defendant F. David Radler.

Please feel free to contact me if you have any questions or comments.

Very truly yours,

Peter K. M. Chan

*JH*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS

SECURITIES AND EXCHANGE COMMISSION,

Plaintiff,

v.

CONRAD M. BLACK, F. DAVID RADLER AND
HOLLINGER INC.,

Defendants.

C.A. No. 04 CV 7377

Judge William T. Hart

## FINAL JUDGMENT AS TO DEFENDANT F. DAVID RADLER

The United States Securities and Exchange Commission ("Commission") having filed its First Amended Complaint for Permanent Injunction and Other Equitable Relief ("Complaint") and Defendant F. David Radler ("Defendant") having entered a general appearance; consented to the Court's jurisdiction over Defendant and the subject matter of this action; consented to entry of this Final Judgment without admitting or denying the allegations of the Complaint (except as to jurisdiction); waived findings of fact and conclusions of law; and waived any right to appeal from this Final Judgment:

**I.**

IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that Defendant and Defendant's agents, servants, employees, attorneys and assigns who receive actual notice of this Final Judgment by personal service or otherwise are permanently restrained and enjoined from violating, directly or indirectly, Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act") [15 U.S.C. § 78j(b)] and Rule 10b-5 promulgated thereunder [17 C.F.R.

§ 240.10b-5], by using any means or instrumentality of interstate commerce, or of the mails, or of any facility of any national securities exchange, in connection with the purchase or sale of any security:

    (a)    to employ any device, scheme, or artifice to defraud;

    (b)    to make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; or

    (c)    to engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person.

## II.

IT IS HEREBY FURTHER ORDERED, ADJUDGED, AND DECREED that Defendant and Defendant's agents, servants, employees, attorneys and assigns who receive actual notice of this Final Judgment by personal service or otherwise are permanently restrained and enjoined from, directly or indirectly, falsifying any book, record or account subject to Section 13(b)(2)(A) of the Exchange Act [15 U.S.C. § 78m(b)(2)] in violation of Rule 13b2-1 promulgated thereunder [17 C.F.R. § 240.13b2-1].

## III.

IT IS HEREBY FURTHER ORDERED, ADJUDGED, AND DECREED that Defendant and Defendant's agents, servants, employees, attorneys and assigns who receive actual notice of this Final Judgment by personal service or otherwise are permanently restrained and enjoined from violating, directly or indirectly, Section 13(b)(5) of the Exchange Act [15 U.S.C. § 78m(b)(5)] by knowingly circumventing or knowingly failing to implement a system of internal

accounting controls or knowingly falsifying any book, record or account described in Section

13(b)(2) of the Exchange Act [15 U.S.C. § 78m(b)(2)].

## IV.

**IT IS HEREBY FURTHER ORDERED, ADJUDGED, AND DECREED** that

Defendant and Defendant's agents, servants, employees, attorneys and assigns who receive actual

notice of this Final Judgment by personal service or otherwise are permanently restrained and

enjoined from directly or indirectly violating Section 14(a) of the Exchange Act [15 U.S.C.

§ 78n(a)] and Rules 14a-3 and 14a-9 [17 C.F.R. §§ 240.14a-3 and 240.14a-9] thereunder, by,

among other things, using any means or instrumentality of interstate commerce, or of the mails,

or of any facility of any national securities exchange or otherwise, in contravention of such rules

and regulations as the Commission may prescribe as necessary or appropriate in the public

interest or for the protection of investors, to solicit or to permit the use of such person's name to

solicit proxies, consents, authorizations or notices of meetings in respect of an issuer's securities

which contain statements which are false and misleading with respect to material facts or omit to

state material facts necessary in order to make the statements therein not false or misleading or

necessary to correct any statement in any earlier communication with respect to the solicitation of a

proxy for the same meeting or subject matter which became false or misleading or which fail to

furnish information required under Exchange Act Rule 14a-3.

## V.

**IT IS HEREBY FURTHER ORDERED, ADJUDGED, AND DECREED** that

Defendant and Defendant's agents, servants, employees, attorneys and assigns who receive actual

notice of this Final Judgment by personal service or otherwise are permanently restrained and

enjoined from, directly or indirectly, as a control person under Section 20(a) of the Exchange

Act, violating Section 13(a) of the Exchange Act [15 U.S.C. § 78m(a)] and Rules 12b-20, 13a-1

and 13a-13 [17 C.F.R. 240.12b-20, 240.13a-1 and 240.13a-13] thereunder, by failing to file with

the Commission, in accordance with such rules and regulations as the Commission may

prescribe, such annual and quarterly reports containing the information required to be included in

such reports and, in addition to the information expressly required to be included in such reports,

such further material information, if any, as may be necessary to make the required statements, in

light of the circumstances under which they are made not misleading.

## VI.

IT IS HEREBY FURTHER ORDERED, ADJUDGED, AND DECREED that

Defendant and Defendant's agents, servants, employees, attorneys and assigns who receive actual

notice of this Final Judgment by personal service or otherwise are permanently restrained and

enjoined from, directly or indirectly, as a control person under Section 20(a) of the Exchange

Act, violating Section 13(b)(2)(A) and 13(b)(2)(B) of the Exchange Act [15 U.S.C.

§§78m(b)(2)(A) and 78m(b)(2)(A)], by, among other things, failing to make and keep books,

records and accounts, which in reasonable detail, accurately and fairly reflect the transactions and

dispositions of the assets of the issuer, and failing to devise and maintain a system of internal

accounting controls sufficient to provide reasonable assurances that transactions are recorded as

necessary to permit preparation of financial statements in conformity with generally accepted

accounting principles or any other criteria applicable to such statements.

4

## VII.

IT IS HEREBY FURTHER ORDERED, ADJUDGED, AND DECREED that

Defendant is liable for disgorgement of $32,347,184, which represents the ill-gotten gains

received as a result of the conduct alleged in the Complaint in the amount of $24,310,911,

together with prejudgment interest thereon in the amount of $8,036,273. Defendant is credited

$8,651,957 towards Defendant's disgorgement liability, representing the amount previously paid

by Defendant to Hollinger International, Inc., now known as The Sun-Times Media Group, Inc.,

pursuant to an agreement dated November 2003. Thus, Defendant is ordered to pay

disgorgement in the amount of $23,695,227. Defendant is also liable for a civil penalty in the

amount of $5,000,000 pursuant to Section 21(d)(3) of the Exchange Act [15 U.S.C. § 78u(d)(3)].

Specifically, Defendant's disgorgement amount represents disgorgement of (i)

$4,300,000 in ill-gotten gains received by Defendant in connection with the CNHI II transaction

alleged in the Complaint; (ii) $285,000 in ill-gotten gains received by Defendant in connection

with the non-competition payments from the Forum and Paxton transactions alleged in the

Complaint; (iii) $2,612,500 in ill-gotten gains received by Defendant in connection with

American Publishing Company transaction alleged in the Complaint; (iv) $15,573,411 in ill-

gotten gains received by Defendant in connection with the CanWest transaction alleged in the

Complaint; (v) $550,000 in ill-gotten gains received by Defendant in connection with the

Bishop/Blackfoot Assignment alleged in the Complaint; (vi) $625,000 in ill-gotten gains

received by Defendant in connection with the Mammoth Times transaction alleged in the

Complaint; and (vi) $365,000 in ill-gotten gains received by Defendant in connection with the

Skagit Valley Argus and San Juan Journal transactions alleged in the Complaint; plus (vii)

prejudgment interest thereon in the amount of $8,036,273, and (viii) Defendant is credited

$8,651,957 previously paid by the Defendant to Hollinger International, Inc., as described above.

Defendant shall satisfy the disgorgement, prejudgment interest and civil penalty

obligations by paying $28,695,227 (the "Fund") within ten (10) business days of the entry of this

Final Judgment. The payment shall be made by certified or cashier's check and distributed as

described below, together with a cover letter identifying F. David Radler as a defendant in this

action; setting forth the title and civil action number of this action and the name of this Court;

and specifying that payment is made pursuant to this Final Judgment. Defendant shall

simultaneously transmit photocopies of such payment and letter to the Commission's counsel,

Kathryn A. Pyszka, in this action. By making this payment, Defendant relinquishes all legal and

equitable right, title, and interest in such funds, and no part of the funds shall be returned to

Defendant. Defendant shall pay post-judgment interest on any delinquent amounts pursuant to

28 USC § 1961.

The above Fund shall be distributed pursuant to the Fair Funds provisions of Section

308(a) of the Sarbanes-Oxley Act of 2002. The Fund shall be paid by certified or cashier's check

to The Sun-Times Media Group, Inc., formerly known as Hollinger International, Inc., at the

following address:

> The Sun-Times Media Group, Inc.
> Attn: Vice President, General Counsel and Secretary
> 350 North Orleans
> Chicago, IL 60654

The amounts ordered to be paid as civil penalties pursuant to this Judgment shall be

treated as penalties paid to the government for all purposes, including all tax purposes. To

preserve the deterrent effect of the civil penalty, Defendant shall not, after offset or reduction of any award of compensatory damages in any Related Investor Action based on Defendant's payment of disgorgement in this action, argue that he is entitled to, nor shall he further benefit by, offset or reduction of such compensatory damages award by the amount of any part of Defendant's payment of a civil penalty in this action ("Penalty Offset"). If the court in any Related Investor Action grants such a Penalty Offset, Defendant shall, within 30 days after entry of a final order granting the Penalty Offset, notify the Commission's counsel in this action and pay the amount of the Penalty Offset to the United States Treasury or to a Fair Fund, as the Commission directs. Such a payment shall not be deemed an additional civil penalty and shall not be deemed to change the amount of the civil penalty imposed in this Judgment. For purposes of this paragraph, a "Related Investor Action" means a private damages action brought against Defendant by or on behalf of one or more investors based on substantially the same facts as alleged in the Complaint in this action.

## VIII.

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that, pursuant to Section 21(d)(2) of the Exchange Act [15 U.S.C. § 78u(d)(2)], Defendant is prohibited from acting as an officer or director of any issuer that has a class of securities registered pursuant to Section 12 of the Exchange Act [15 U.S.C. § 78l] or that is required to file reports pursuant to Section 15(d) of the Exchange Act [15 U.S.C. § 78o(d)].

## IX.

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that Defendant shall comply with all of the undertakings and agreements set forth in the Consent of Defendant F. David Radler, which is attached hereto as Exhibit A and is part of this Final Judgment.

## X.

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that any papers filed by Defendant in this action are withdrawn to the extent that they deny any allegations in the Complaint.

## XI.

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that this Court shall retain jurisdiction of this matter for the purposes of enforcing the terms of this Final Judgment.

## XII.

There being no just reason for delay, pursuant to Rule 54(b) of the Federal Rules of Civil Procedure, the Clerk is ordered to enter this Final Judgment forthwith and without further notice.

Dated: _April 19_, 2007

_William T. Hart_

UNITED STATES DISTRICT JUDGE

8

## EXHIBIT A

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS

SECURITIES AND EXCHANGE COMMISSION,

Plaintiff,

v.

CONRAD M. BLACK, F. DAVID RADLER AND
HOLLINGER INC.,

Defendants.

C.A. No. 04 CV 7377

Judge William T. Hart

## CONSENT OF DEFENDANT F. DAVID RADLER

1.    Defendant F. David Radler ("Defendant") acknowledges having been served with
the United States Securities and Exchange Commission's First Amended Complaint for
Permanent Injunction and Other Equitable Relief ("Complaint") in this action and acknowledges
having filed an answer to the Complaint, enters a general appearance, and admits the Court's
jurisdiction over Defendant and over the subject matter of this action.

2.    Without admitting or denying the allegations of the Complaint (except as to
personal and subject matter jurisdiction, which Defendant admits), Defendant hereby consents to
the entry of the final judgment in the form attached hereto (the "Final Judgment") and
incorporated by reference herein, which, among other things:

(a)    permanently restrains and enjoins Defendant from violating, directly or
indirectly, Sections 10(b), 13(b)(5) and 14(a) of the Securities Exchange
Act of 1934 ("Exchange Act") [15 U.S.C. §§ 78j(b), 78m(b)(5) and
78n(a)] and Rules 10b-5, 13b2-1, 14a-3, 14a-9 thereunder [17 C.F.R. §§

240.10b-5, 240.13b2-1, 240.14a-3 and 240.14a-9] and, as a control person

pursuant to Section 20(a) of the Exchange Act [15 U.S.C. §20(a)], Section

13(a) and 13(b)(2)(A) and 13(b)(2)(B) of the Exchange Act [15 U.S.C.

§§78t(a), 78m(b)(2)(A) and 78m(b)(2)(A)] and Rules 12b-20, 13a-1 and

13a-13 [17 C.F.R. §§ 240.12b-20, 240.13a-1, 240.13a-13] thereunder;

(b)     orders Defendant liable for disgorgement in the amount of $32,347,184,

representing ill-gotten gains as a result of the conduct alleged in the

Complaint in the amount of $24,310,911, together with prejudgment

interest thereon in the amount of $8,036,273, but credits Defendant for

$8,651,957 paid to Hollinger International, Inc., now known as The Sun-

Times Media Group, Inc., pursuant to an agreement between Defendant

and Hollinger International dated November 2003, and orders Defendant

to pay the amount of $23,695,227. Specifically, Defendant's

disgorgement amount represents (i) $4,300,000 in ill-gotten gains received

by Defendant in connection with the CNHI II transaction alleged in the

Complaint; (ii) $285,000 in ill-gotten gains received by Defendant in

connection with the non-competition payments from the Forum and

Paxton transactions alleged in the Complaint; (iii) $2,612,500 in ill-gotten

gains received by Defendant in connection with American Publishing

Company transaction alleged in the Complaint; (iv) $15,573,411 in ill-

gotten gains received by Defendant in connection with the CanWest

transaction alleged in the Complaint; (v) $550,000 in ill-gotten gains

received by Defendant in connection with the Bishop/Blackfoot

2

Assignment alleged in the Complaint; (vi) $625,000 in ill-gotten gains received by Defendant in connection with the Mammoth Times transaction alleged in the Complaint; and (vi) $365,000 in ill-gotten gains received by Defendant in connection with the Skagit Valley Argus and San Juan Journal transactions alleged in the Complaint; plus (vii) prejudgment interest thereon in the amount of $8,036,273, and (viii) which credits Defendant for the $8,651,957 previously paid to Hollinger International, Inc., as described above;

(c)    orders Defendant liable for and to pay a civil penalty in the amount of $5,000,000 under Section 21(d)(3) of the Exchange Act [15 U.S.C. § 78u(d)(3)]; and

(d)    bars Defendant from serving as an officer or director of any issuer required to file reports with the Commission under Sections 12(b), 12(g), or 15(d) of the Exchange Act [15 U.S.C. §§ 78l(b), 78l(g) and 78o(d)] pursuant to 21(d)(2) of the Exchange Act [15 U.S.C. §78u(d)(2)].

3.    Defendant acknowledges that the civil penalty paid pursuant to the Final Judgment shall be distributed to The Sun-Times Media Group, Inc., formerly known as Hollinger International, Inc., pursuant to the Fair Fund provisions of Section 308(a) of the Sarbanes-Oxley Act of 2002. The civil penalty shall be treated as a penalty paid to the government for all purposes, including all tax purposes. To preserve the deterrent effect of the civil penalty, Defendant agrees that he shall not, after offset or reduction of any award of compensatory damages in any Related Investor Action based on Defendant's payment of disgorgement in this action, argue that he is entitled to, nor shall he further benefit by, offset or reduction of such

3

compensatory damages award by the amount of any part of Defendant's payment of a civil

penalty in this action ("Penalty Offset"). If the court in any Related Investor Action grants such

a Penalty Offset, Defendant agrees that he shall, within thirty (30) days after entry of a final

order granting the Penalty Offset, notify the Commission's counsel in this action and pay the

amount of the Penalty Offset to the United States Treasury or to a Fair Fund, as the Commission

directs. Such a payment shall not be deemed an additional civil penalty and shall not be deemed

to change the amount of the civil penalty imposed in this action. For purposes of this paragraph,

a "Related Investor Action" means a private damages action brought against Defendant by or on

behalf of one or more investors based on substantially the same facts as alleged in the Complaint

in this action.

      4.     Defendant agrees that he shall not seek or accept, directly or indirectly,

reimbursement or indemnification from any source, including but not limited to payment made

pursuant to any insurance policy, with regard to any civil penalty amounts that Defendant pays

pursuant to the Final Judgment, regardless of whether such penalty amounts or any part thereof

are added to a distribution fund or otherwise used for the benefit of investors. Defendant further

agrees that he shall not claim, assert, or apply for a tax deduction or tax credit with regard to any

federal, state, or local tax for any civil penalty amounts that Defendant pays pursuant to the Final

Judgment, regardless of whether such civil penalty amounts or any part thereof are added to a

distribution fund or otherwise used for the benefit of investors.

      5.     Defendant waives the entry of findings of fact and conclusions of law pursuant to

Rule 52 of the Federal Rules of Civil Procedure.

      6.     Defendant waives the right, if any, to a jury trial and to appeal from the entry of

the Final Judgment.

4

7.    Defendant enters into this Consent voluntarily and represents that no threats, offers, promises, or inducements of any kind have been made by the Commission or any member, officer, employee, agent, or representative of the Commission to induce Defendant to enter into this Consent.

8.    Defendant agrees that this Consent shall be incorporated into the Final Judgment with the same force and effect as if fully set forth therein.

9.    Defendant will not oppose the enforcement of the Final Judgment on the ground, if any exists, that it fails to comply with Rule 65(d) of the Federal Rules of Civil Procedure, and hereby waives any objection based thereon.

10.    Defendant waives service of the Final Judgment and agrees that entry of the Final Judgment by the Court and filing with the Clerk of the Court will constitute notice to Defendant of its terms and conditions. Defendant further agrees to provide counsel for the Commission, within 30 days after the Final Judgment is filed with the Clerk of the Court, with an affidavit or declaration stating that Defendant has received and read a copy of the Final Judgment.

11.    Consistent with 17 C.F.R. 202.5(f), this Consent resolves only the claims asserted against Defendant in this civil proceeding. Defendant acknowledges that no promise or representation has been made by the Commission or any member, officer, employee, agent, or representative of the Commission with regard to any criminal liability that may have arisen or may arise from the facts underlying this action or immunity from any such criminal liability. Defendant waives any claim of Double Jeopardy based upon the settlement of this proceeding, including the imposition of any remedy or civil penalty herein. Defendant further acknowledges that the Court's entry of a permanent injunction may have collateral consequences under federal or state law and the rules and regulations of self-regulatory organizations, licensing boards, and

5

other regulatory organizations. Such collateral consequences include, but are not limited to, a statutory disqualification with respect to membership or participation in, or association with a member of, a self-regulatory organization. This statutory disqualification has consequences that are separate from any sanction imposed in an administrative proceeding. In addition, in any disciplinary proceeding before the Commission based on the entry of the injunction in this action, Defendant understands that he shall not be permitted to contest the factual allegations of the Complaint in this action.

12.    Defendant understands and agrees to comply with the Commission's policy "not to permit a defendant or respondent to consent to a judgment or order that imposes a sanction while denying the allegations in the complaint or order for proceedings." 17 C.F.R. § 202.5. In compliance with this policy, Defendant agrees: (i) not to take any action or to make or permit to be made any public statement denying, directly or indirectly, any allegation in the complaint or creating the impression that the complaint is without factual basis; and (ii) that upon the filing of this Consent, Defendant hereby withdraws any papers filed in this action to the extent that they deny any allegation in the complaint. If Defendant breaches this agreement, the Commission may petition the Court to vacate the Final Judgment and restore this action to its active docket. Nothing in this paragraph affects Defendant's: (i) testimonial obligations; or (ii) right to take legal or factual positions in litigation or other legal proceedings in which the Commission is not a party.

13.    Defendant hereby waives any rights under the Equal Access to Justice Act, the Small Business Regulatory Enforcement Fairness Act of 1996, or any other provision of law to seek from the United States, or any agency, or any official of the United States acting in his or her official capacity, directly or indirectly, reimbursement of attorney's fees or other fees,

6

expenses, or costs expended by Defendant to defend against this action. For these purposes,
Defendant agrees that Defendant is not the prevailing party in this action since the parties have
reached a good-faith settlement.

14.    In connection with this action and any related judicial or administrative
proceeding or investigation commenced by the Commission or to which the Commission is a
party, Defendant agrees to cooperate with the Commission, including: (i) voluntarily making
himself available to be interviewed by Commission staff at such times and places as the staff
requests upon reasonable notice; (ii) accepting service by mail or facsimile transmission of
notices or subpoenas issued by the Commission for documents or testimony in any civil and/or
administrative proceeding in connection with any related investigation by Commission staff; (iii)
appointing Defendant's undersigned attorney as agent to receive service of such notices and
subpoenas by the Commission; (iv) with respect to such notices and subpoenas, waives any
territorial limitations on service contained in Rule 45 of the Federal Rules of Civil Procedure and
any applicable local rules, provided that the party requesting the testimony reimburses Defendant's
travel, lodging, and subsistence expenses at the then-prevailing U.S. Government per diem rates;
and (v) consents to personal jurisdiction over Defendant in any United States District Court for
purposes of enforcing any such subpoena.

15.    Defendant agrees that the Commission may present the Final Judgment to the
Court for signature and entry without further notice.

7

## CERTIFICATE OF SERVICE

It is hereby certified that service of this **Government's Ex Parte and Sealed Submission on Government's Sentencing Position Concerning Defendant Radler** has been made on defendant by mailing a copy on this 9th day of November 2007, in a government franked envelope with postage prepaid, properly addressed as follows:

Anton R. Valukas, Esq.
Jenner & Block, LLP
330 N. Wabash Avenue
Chicago, IL 60611

By: _____
    ERIC H. SUSSMAN
    Assistant United States Attorney
    219 S. Dearborn Street 3rd Floor
    Chicago, Illinois  60604
    (312) 353-1412